Mrs. L. L. Davis, Petitioner

v.

East Texas Savings & Loan Association of Tyler, Texas
ET AL, Respondents

No. A-8455.  Decided February 28, 1962
Rehearing Denied April 4, 1962
354 S.W. 2d 927

*Smith & Smith,* Tyler, for petitioner.

*Reeves & Reeves,* Tyler, for respondent East Texas Savings & Loan Ass'n.

*Power, McDonald & Mell,* and *L. L. James,* Tyler for respondents Ritta Lee Venable and husband.

CHIEF JUSTICE CALVERT delivered the opinion of the Court.

East Texas Savings & Loan Association filed an interpleader suit in the district court against Mrs. L. L. Davis, individually and as independent executrix of the estate of L. L. Davis, deceased, and Mrs. Ritta Lee Venable to determine the ownership of a fund in the amount of $6000 which East Texas deposited in

the registry of the court. East Texas sought recovery of its attorney's fee of $450 and court costs. Mrs. Davis is the surviving widow of L. L. Davis and Mrs. Venable is his daughter by a previous marriage.

Mrs. Davis, by way of answer, denied East Texas' right to recover the attorney's fee, and by cross-action sought recovery of the entire $6000. Mrs. Venable by cross-action sought to recover one-half of the $6000 and sought a recovery from Mrs. Davis of one-half of a sum of $2000 collected by her from First Federal Savings & Loan Association.

The trial court's judgment denied all relief sought by East Texas and Mrs. Venable, and awarded the entire $6000 to Mrs. Davis, individually. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment as follows: East Texas was awarded a recovery of its attorney's fee in the sum of $450 and of costs; the remainder of the $6000 in the registry of the court, after payment of court costs and East Texas' attorney's fee, was divided equally between Mrs. Davis and Mrs. Venable; Mrs. Venable was awarded a recovery from Mrs. Davis of one-half of the sum of $2000 collected by her from First Federal, a one-half interest in all money in the bank at the time of the death of L. L. Davis, and a one-half interest in a burial certificate owned by L. L. Davis at the time of his death. The recovery allowed Mrs. Venable was made subject to payment of one-half of East Texas' attorney fee, one-half of costs in the trial court, one-half of the burial expense of L. L. Davis, one-half of the cost of his tombstone, one-half of an attorney's fee to be allowed for probating the will of L. L. Davis, and one-half of the court costs in the probate proceedings. The court severed the issue relating to the fee of the attorney who probated the will and remanded that issue to the trial court to hear evidence and determine the amount thereof. The judgment was ordered certified to the district court for observance. All costs of appeal were adjudged against Mrs. Davis, individually. 346 S.W. 2d 178.

The factual background of the suit is as follows: On January 6, 1953, L. L. Davis, then a single man, deposited the sum of $6000 with East Texas and received stock certificate No. 2755, issued in his name. On February 13, 1953, L. L. Davis married petitioner. At the request of L. L. Davis, stock certificate No. 2755 was changed to read "L. L. Davis or Mrs. L. L. Davis" on January 3, 1956, and at the same time a signature card was signed by Mr. and Mrs. Davis which stated that the certificate was held by them as joint tenants with right of survivorship.

Two stock certificates in the amount of $1000 each were purchased by Mr. and Mrs. Davis during their marriage from First Federal. One certificate was purchased on January 8, 1955, and the other on January 3, 1956. Both were issued in the name of Mr. or Mrs. L. L. Davis as joint tenants with right of survivorship.

On July 10, 1959, L. L. Davis died leaving a will, executed on May 7, 1956, naming Mrs. Davis as independent executrix. The will was admitted to probate on October 14, 1959.

At a date uncertain but after October 14, 1959, and before October 20, 1959, Mrs. Davis presented certificate No. 2755 to East Texas and requested payment. Both before and after this informal demand, East Texas was notified by Mrs. Venable through her attorney that she was claiming a one-half interest in the funds represented by the certificate under the terms of the will of L. L. Davis. As a result of such information, the records of East Texas were "flagged" to indicate the dispute. After East Texas refused to pay the money, Mrs. Davis presented a formal written demand on October 20, 1959.

The will of L. L. Davis contains the following pertinent provisions:

## "II

"I give to my wife, Cora E. Davis, our homestead located at 905 North Bois d'Arc Avenue in the City of Tyler, State of Texas, and described as all that lot or parcel of land situated within the County of Smith, State of Texas, in the corporate limits of the City of Tyler, to wit: (description) as well as all of our household furniture, our automobile, all personal effects and belongings and other property of a similar nature used personally or in or about the home.

## "III

"All the rest and residue of my estate consisting of cash, bond, stocks, and personal property of a similar nature I give equally, share and share alike, to my wife, Cora E. Davis, and my daughter, *Rittia* Lee *Vendable*, to be divided one-half (1/2) each at the earliest possible time after the payment of expenses as above provided."

The theory of the trial court's judgment is reflected in the judge's findings of fact and conclusions of law. He found that

the $6000 deposited by East Texas was the only property involved in the case; that East Texas was not justified in filing the interpleader suit; that under the terms of the agreement made with East Texas on January 3, 1956, Mrs. Davis became a joint tenant of the East Texas deposit with right of survivorship, which interest ripened into absolute ownership upon the death of L. L. Davis; that L. L. Davis did not intend by the third paragraph of his will to dispose of property other than his own; that although paragraph two of the will gave separate property of the testator to Mrs. Davis and thereby gave her property which she would not otherwise have been entitled to, she was not put to an election by the will, and that by taking the property described in paragraph two she had not elected to give up her interest in the $6000 deposit.

The judgment of the Court of Civil Appeals rests on holdings that East Texas was justified in filing the interpleader suit; that title to the $6000 deposit and the $2000 collected by Mrs. Davis from First Federal is controlled by our decision in Hilley v. Hilley, 342 S.W. 2d 565; that the testator did intend by paragraph three of the will to dispose of the $6000 on deposit with East Texas and other property owned by Mrs. Davis; that the will did put Mrs. Davis to an election, and that by taking the property devised and bequeathed to her in paragraph two of the will Mrs. Davis became bound by the disposition in paragraph three.

We hold: 1. East Texas was not justified in filing the interpleader suit and, therefore, is not entitled to recover its attorney's fee and costs. 2. Title to the $6000 deposit is not governed by Hilley v. Hilley. 3. Upon the death of L. L. Davis, Mrs. Davis became the owner of the $6000 on deposit with East Texas. 4. Title to the $2000 collected from First Federal was, and is, in issue in the case. 5. Title to the $2000 is governed by Hilley v. Hilley and was community property of Mrs. Davis and L. L. Davis at his death. 6. L. L. Davis did not intend by paragraph three of his will to dispose of property not owned by him. 7. The will did not put Mrs. Davis to an election, and by taking the property given her in paragraph two of the will she did not elect to give up her separate or community interest in other property. 8. That the Court of Civil Appeals erred in closing the independent administration and in undertaking to partition and distribute the estate of L. L. Davis.

■ 1. East Texas was not justified in filing the interpleader suit. An interpleader suit is authorized by Rule 43, Texas Rules of

Civil Procedure, only when persons having claims against the plaintiff are such that he "is or may be exposed to double or multiple liability". The claims "must be such as to place the stakeholder in some real doubt or hazard to entitle him to the remedy of interpleader", Nixon v. Malone, 100 Texas 250, 98 S.W. 380, 385, and the doubt must at least be a reasonable one. Employers' Casualty Co. v. Rockwall County, 120 Texas 441, 35 S.W. 2d 690, 693; Greenwald v. Ligon, Texas Com. App., 14 S.W. 2d 829, 832.

Certificate No. 2755 provides that it is issued by East Texas and accepted by the purchasers "subject to all the laws of the State of Texas". Article 881a-23, Vernon's Annotated Texas Statutes, provides that when shares or share accounts are issued by a building and loan association "in the name of two or more persons, or to two or more persons or the survivor of either (sic)," the share or share accounts "may be withdrawn on the signature of either party to whom such share or share accounts were issued, * * * and such association shall have no further liability for the amounts so paid." The Article further provides:

"Such a joint account shall create a single membership in such association, and the repurchase or withdrawal value of share or share accounts issued in joint names and dividends thereon, or other rights relating thereto, may be paid or delivered in whole or in part, to any of such persons who shall make request therefor, *whether the other person or persons be living or dead.* The payment or delivery to any such person, on a receipt or acquittance signed by any such person, to whom any such payment or such delivery of rights is made, shall be a valid and sufficient release and discharge of any such association for the payment or delivery so made."

Under the express terms of the certificate and the statute, East Texas could have paid the $6000 on deposit with it to Mrs. Davis without the slightest risk of double liability. The statute shielded it from risk with absolute immunity. There was, and is, no room for reasonable doubt of that fact.

East Texas urges that the decisions in Pruett v. First National Bank in Temple, Texas Civ. App., 175 S.W. 2d 658, no writ history, and Adams v. Jones, Texas Civ. App., 258 S.W. 2d 401, no writ history, and the fact that Art. 881a-23 had not been construed by the courts made it doubtful of its rights and thus justified it in refusing to pay Mrs. Davis and in filing this suit. The Pruett case dealt with Art. 541d, V.A.T.C.S., before

that Article was changed and incorporated in the Texas Banking Code as Art. 342-710, governing the liability of banks for paying out money deposited in a joint account. That statute immunized banks against liability for payments made from joint accounts, in accordance with the terms of joint account agreements, prior to receipt "of notice in writing not to pay such deposit". The decision is patently not authority for the refusal of East Texas to pay under the controlling provisions of Art. 881a-23. Adams v. Jones dealt with the question of ownership of a joint account in a bank and not with the rights of the bank. The statutory protection guaranteed East Texas by Art. 881a-23 is too plain to require construction.

2. Ownership of the $6000 certificate or deposit is not governed by Hilley v. Hilley. The certificate in Hilley v. Hilley was purchased with community funds. The East Texas certificate was purchased with separate funds of L. L. Davis. The legal consequences of the two transactions are entirely different.

3. Upon the death of L. L. Davis, Mrs. Davis became the owner of the $6000 on deposit with East Texas as her separate property. The contract made by Davis with East Texas was a valid and enforceable contract for the benefit of a third party. Edds v. Mitchell, 143 Texas 307, 184 S.W. 2d 823, 828. In that case we held that United States Savings Bonds purchased by Mrs. Rhode and made payable to herself and on her death to Mrs. Edds, were, on the death of Mrs. Rhode, the property of Mrs. Edds. Our conclusion was predicated on a holding that the contract made by Mrs. Rhode with the United States Government was for the benefit of Mrs. Edds and that when the bonds were purchased Mrs. Edds acquired a present vested though defeasible interest in the bonds which ripened into full and absolute title upon Mrs. Rhode's death. That case and this case are not to be distinguished because the former involved bonds and this involves a savings and loan certificate.

■ In this case the rights of Mrs. Davis are the same as those of Mrs. Edds. When the contract was made by L. L. Davis with East Texas, Mrs. Davis was thereby vested with a present, though defeasible, interest in the deposit. Her interest would have been defeated if the certificate had been changed by Davis or the deposit had been withdrawn before his death, or if Mrs. Davis had predeceased her husband. But when Davis died without the interest of Mrs. Davis having been defeated, she became the owner of the full title to the deposit. We know of no constitutional or statutory impediment to the making by a husband of

such a contract affecting title to his separate funds. We specifically recognized that right in Hilley v. Hilley, 342 S.W. 2d 565, 571, when we said, "there seems to be no legal impediment to recognition of a contract for the benefit of a third party when the bonds are acquired with the purchaser's separate funds." See also Chamberlain v. Robinson, Texas Civ. App., 305 S.W. 2d 817, writ refused and McFarland v. Phillips, Texas Civ. App., 253 S.W. 2d 953, writ refused n.r.e.

4. Title to the $2000 collected by Mrs. Davis on the First Federal certificates was, and is, an issue in the case. Ownership of this fund was put in issue by the answer and cross-action of Mrs. Venable on which the case was tried. She predicated her claim to ownership of an interest therein on construction of paragraph three of her father's will. Neither East Texas nor Mrs. Davis raised any question of the court's right or duty to try the issue. On the contrary, Mrs. Davis claimed to be the owner of all of the proceeds of these certificates as her separate property. Evidence was introduced concerning the purchase of the certificates and the collection of the proceeds by Mrs. Davis.

Rule 43, Texas Rules of Civil Procedure, governing interpleader suits, expressly states that its provisions "supplement and do not in any way limit the joinder of parties permitted in any other rules". Neither should, nor will, the Rule be construed to limit the joinder of claims permitted by other rules. Joinder of the claim by Mrs. Venable to an interest in the $2000 is authorized by Rules 51 and 97, Texas Rules of Civil Procedure. The issue thus squarely joined on ownership of proceeds of the First Federal certificates should have been determined by the judgment of the trial court.

■ 5. The two First Federal certificates were purchased during marriage, presumptively with community funds. Title to those certificates and the deposit they represented is governed by Hilley v. Hilley, 342 S.W. 2d 565. They were the community property of Mr. and Mrs. Davis, and title to the one-half community interest of Mr. Davis vests according to the provisions of his will.

■ 6. L. L. Davis did not intend by paragraph three of his will to dispose of property not owned by him. Mrs. Venable's claim to a one-half interest in the $6000 deposited in court and a one-half interest in the $2000 collected by Mrs. Davis from First Federal must rest upon a conclusion that by paragraph three of his will Mr. Davis intended to dispose of the East Texas certifi-

cate which upon his death became the separate property of Mrs. Davis and of Mrs. Davis' one-half community interest in the First Federal certificates.

The law presumes that a testator intends to dispose of only his own property, and a testamentary instrument will not be construed to dispose of property not owned by the testator unless that result is indicated by clear and unequivocal language which leaves the will "open to no other construction". Wright v. Wright, 154 Texas 138, 274 S.W. 2d 670, 674-675; Avery v. Johnson, 108 Texas 294, 192 S.W. 542, 544. For, as we have held, if the language of the will is open to a different construction, that is, a construction that the testator intended to dispose of only his own property, the instrument will be construed as a matter of law as not disposing of any other property. Wright v. Wright, supra.

Here, the testator stated in paragraph three of his will that he gave equally to Mrs. Davis and Mrs. Venable "All the rest and residue of *my* estate consisting of cash, bonds, stocks, and personal property of a similar nature". The use of the words, "my estate" and "my property" in themselves indicate an intention to dispose only of the testator's own property. Wright v. Wright, supra; Avery v. Johnson, supra; Rippy v. Rippy, Texas Civ. App., 49 S.W. 2d 494, writ refused; Ward v. Gohlke, Texas Civ. App., 279 S.W. 2d 422, writ refused. It follows that an intention to dispose of Mrs. Davis' separate property and her one-half interest in community property is not disclosed by clear and unequivocal language in the will.

7. Since paragraph three of the will does not dispose of Mrs. Davis' separate and community interest in the savings and loan certificates and other personal property, she was not put to an election of whether to give up that interest and take the property devised to her in paragraph two of the will or retain that interest and give up the property devised to her in paragraph two. Paragraph three of the will, properly construed, disposes only of Davis' separate property, if any, and of his one-half of the community. Mrs. Davis and Mrs. Venable take the property in equal shares.

■ 8. At the time this suit was filed the estate of L. L. Davis was being administered by Mrs. Davis as independent executrix. Evidence in the record clearly indicates that the estate had not been fully administered and the trial judge so found. Section 152 of the Probate Code authorizes a distributee to file an application to close an independent administration, but the application

must be made to the probate court and may be granted only "after an estate has been fully administered and there is no further need for an independent administration of such estate". The judgment of the Court of Civil Appeals in effect ordered the administration on the estate of L. L. Davis closed and the estate partitioned and distributed as there directed. The district court did not err in refusing to close the administration or in refusing to partition and distribute the estate and the Court of Civil Appeals erred in reversing and rendering a contrary judgment.

The judgment of the Court of Civil Appeals is reversed. That part of the judgment of the district court denying East Texas any relief and awarding Mrs. Davis individually the $6000 on deposit in the registry of the court is affirmed. That part of the judgment of the district court decreeing that Mrs. Venable take nothing is reversed, and it is ordered that Mrs. Venable's title to a one-fourth interest in the $2000 collected by Mrs. Davis from First Federal Savings & Loan Association be established, subject to a due and orderly administration by Mrs. Davis of the estate of L. L. Davis. The trial court's judgment assessing all costs in that court against East Texas is affirmed. One third of the costs in the Court of Civil Appeals and in this court is assessed against each of the parties.

Opinion delivered February 28, 1962.